IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOSHUA T. KING                                                        PLAINTIFF

v.                              Civil No. 11-2216

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                        DEFENDANT

### MEMORANDUM OPINION

Plaintiff, Joshua King, brings this action under 42 U.S.C. § 405(g), seeking judicial review of

a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for

a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI")

under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence

in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed his applications for DIB and SSI in January 2009, alleging an onset date of

December 1, 2008, due to a chemical imbalance and asthma.[1]  Tr. 157-163, 191, 212-213, 236.  His

claims were denied both initially and upon reconsideration.  Tr.55-77.  An administrative hearing was

then held on April 16, 2010.  Tr. 30-54.

At the time of the administrative hearing, Plaintiff was 38 years of age and possessed a tenth

grade education.  Tr. 25, 33, 43, 49, 170.  He had past relevant work ("PRW") as a stocker at a large

chain store.  Tr. 192, 204-211, 240, 246.

On July 15, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe,

Plaintiff's depression and asthma did not meet or equal any Appendix 1 listing.  Tr. 18-19.  The ALJ

determined that Plaintiff maintained the residual functional capacity ("RFC") to perform light work, but

---

[1]A prior application was filed and denied at the initial level in June 2000.  Tr. 189.  However, it is not at issue in
the current matter before this court.

must avoid concentrated exposure to dust, odors, fumes, and poor ventilation.  Nonexertionally, Plaintiff was limited to work where the interpersonal contact was incidental to the work performed; the complexity of the tasks was learned and performed by rote with few variables and little judgment; and, the supervision required was simple, direct, and concrete.  Tr. 20-23.  With the assistance of a vocational expert, the ALJ then found that Plaintiff could perform work as a production worker, maid and house cleaner, and meat cutter.  Tr. 24.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on September 14, 2011.  Tr. 1-5.  Subsequently, Plaintiff filed this action.  ECF No. 1.  This case is before the undersigned by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF No. 7, 10.

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary."  *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

2

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

    **A.**    **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.**    **Discussion**:

Of particular concern to the undersigned is the ALJ's failure to properly consider Plaintiff's diagnosis of antisocial personality disorder.  Antisocial personality disorder is a serious mental impairment characterized by a pervasive pattern of disregard for, and violation of, the rights of others that begins in early childhood or early adolescence and continues into adulthood.  DIAGNOSTIC AND

STATISTICAL MANUAL OF MENTAL DISORDERS IV TEXT REVISION 701 (Fourth ed. 2000).  Individuals suffering from this disorder are often involved in criminal and exploitative behaviors, as they lack both empathy and impulse control, and often lie and use manipulative tactics to get what they want.  *Id*.

Although treatment for this disorder consists primarily of psychotherapy, medications may also be prescribed to treat depression, anxiety, or thyroid disorders, which often co-exist with antisocial personality disorder.  *See* Mayo Foundation for Medical Education and Research, *Antisocial Personality Disorder Treatments and Drugs*,  http://www.mayoclinic.com/health/antisocial-personality-disorder/ DS00829/DSECTION=treatments-and-drugs (last accessed January 9, 2013).  However, individuals suffering from antisocial personality disorder are often noncompliant with or fail to seek out treatment because they do not think they need treatment.  *Id*.

While we are cognizant of the relevant time period in this case, we can not ignore the medical evidence concerning Plaintiff's mental health problems dating back to early childhood.  Records indicate that he was sexually and physically abused by relatives and neglected and abandoned by his mother in early childhood.  He was noted to have a history of fighting, stealing, shooting another youth in the hand, molesting younger children, claiming to be crazy, and threatening to kill others, with his earliest arrest being for stealing food at the age of seven.  A lack of remorse is also documented.  And, significant behavioral and learning problems in school were also evident.  At the age of 13, Plaintiff was hospitalized for raping his five year old cousin. Tr. 340-414, 535-589. Records indicate that he tried to commit suicide by hanging himself on his first day of hospitalization. And, while hospitalized, Plaintiff was accused of sexually assaulting another female patient and physically assaulting members of the hospital staff.  Due to this behavior, in January 1987, he was placed in Juvenile Detention.  At this time, Plaintiff was diagnosed with conduct disorder and noted to have poor social judgment and poor impulse control.  Continued violence landed him at St. John's Medical Center in September 1988. Tr. 420-428, 598-611.  He reportedly broke another child's arm, broke his best friend's nose, and assaulted teachers

4

at school.  His mother indicated that he was uncontrollable, not following the rules, being impulsive, lacking control over his anger, threatening to harm others, and exhibiting low self-esteem.  After being prescribed Lithium and Norpramine, he improved and was discharged home to his mother.  However, in August 1989, problems continued and Plaintiff was placed in a Children's Home.  Tr. 452.  While there, he sexual assaulted a girl, sprayed her with a fire extinguisher, consumed alcohol, and refused to abide by the rules.  Accordingly, he was sent to Sagamore Hills Children's Psychiatric Hospital in September 1989.  Tr. 441-458, 613-656.  There, he was diagnosed with bipolar disorder (mixed) and identity disorder.  It was determined that he was unable to be controlled in a non-secure, low staffed residential facility and would require a secure, highly structured residential treatment facility.

As an adult, Plaintiff was arrested for a variety of offenses including theft, battery, assault, weapons, breaking and entering, burglary, traffic violations, drug offenses, and sexual assault.  In 1997, he was incarcerated in the Louisiana Department of Corrections for approximately two years.  Tr. 461-533.  During his incarceration, he experienced continued problems with anger and aggression and was often non-compliant with his medication.  Records several confinements in segregation due to conflict with guards and other inmates.  He carried diagnoses of bipolar disorder and impulse control disorder.

From June 2008 until September 2008, Plaintiff was imprisoned for sexual assault.  Tr. 285.  Although released from prison, Plaintiff received a 10 year suspended sentence for this crime.  Tr. 285.

In April 2009, Plaintiff underwent a mental diagnostic evaluation with Dr. Diane Brandmiller.  Tr. 283-290.  Plaintiff gave a detailed medical and criminal history.  And, reported continued problems with anger management and physical violence.  He indicated that he was involved in physical altercations on a weekly basis.  Further, he had last caused serious bodily injury to another approximately one month before when he assaulted a smoker smoking in a nonsmoking area.  Dr. Brandmiller diagnosed Plaintiff with depressive disorder not otherwise specified and antisocial personality disorder.

She noted that he would likely have problems with authority figures and co-workers, but did not explain how this would impact his ability to return to work.

On April 24, 2009, non-examining consultant, Dr. Dan Donahue completed a psychiatric review technique form and a mental RFC assessment.  Tr. 294-311.  He diagnosed Plaintiff with depressive disorder and antisocial personality disorder.  Dr. Donahue was of the opinion that Plaintiff would have moderate limitations with regard to maintaining attention and concentration for extended periods, completing a workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, responding appropriately to changes in work setting, setting realistic goals, and making plans independently of others.

The evidence also suggests that Plaintiff had been dismissed from his three most recent jobs due to interpersonal conflicts, though it is not clear whether these conflicts were purely verbal or involved physical violence.  Tr. 285.  And, a review of his employment history reveals sporadic employment, at best, which could be consistent with an individual who experiences significant interpersonal difficulties.  Tr. 165-166.  As for his personal life, Plaintiff also reported two failed marriages, stating that his first marriage was riddled with physical abuse and alcoholism.  Tr. 285.  He also had four children with whom he had no contact.

Given Plaintiff's history of antisocial personality disorder and harm to others, we believe that remand is necessary.  *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record).  As the ALJ found this to constitute a non-severe impairment, we believe further evaluation of the record is necessary.  *See Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)) (severe impairment significantly limits the claimant's physical or mental ability to do basic work activities). The undersigned

6

is particularly concerned with Plaintiff's ability to work alongside co-workers and supervisors, due to his violent propensities.

We also note that the record does not contain an RFC assessment from an examining source. As such, we believe remand is also necessary to allow the ALJ to obtain a consultative psychological evaluation, complete with a mental RFC assessment. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (a claimant's residual functional capacity is a medical question). The examiner should be asked direct questions regarding Plaintiff's ability to safely work with and near others.

On remand, should the ALJ determine Plaintiff is capable of performing work that exists in significant numbers in the national economy, he is directed to consider Plaintiff's violent history when determining the available positions. Specifically, it is ill advisable to place someone with Plaintiff's violent history in a position that requires him to use knives or other equipment that could easily be used to harm himself or others.

**IV.**     **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 10th day of January 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)